RICHARD T. MULLOY (Bar No. 199278)
richard.mulloy@dlapiper.com
EDWARD H. SIKORSKI (Bar No. 208576)
ed.sikorski@dlapiper.com
PETER MAGGIORE (Bar No. 292534)
peter.maggiore@us.dlapiper.com
CATHERINE HUANG (Bar No. 299696)
**DLA PIPER LLP (US)**
4365 Executive Drive, Suite 1100
San Diego, California  92121-2133
Telephone:  858.677.1400
Facsimile:  858.677.1401

Attorneys for Defendant
NIKE, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CELLSPIN SOFT, INC.,<br><br>                    Plaintiff,<br><br>v.<br><br>NIKE, INC.,<br><br>                    Defendant. | CASE NO.  23-cv-05340-YGR<br><br>**NIKE, INC.'S MOTION FOR SANCTIONS PURSUANT TO 28 U.S.C. § 1927 AND THE COURT'S INHERENT AUTHORITY**<br><br>Dept.:  Courtroom 1, 4th Floor<br>Judge:  Honorable Yvonne Gonzalez Rogers<br>Date:    March 12, 2024<br>Time:    2:00 p.m. PT |

## Table of Contents

Page

I.     INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 2

II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY .................................. 3

     A.     Cellspin's Original Lawsuit Against Nike In This District. ................................ 3

     B.     Cellspin And Its Counsel's Forum-Shopping in the Western District of Texas. ........................................................................................................... 4

     C.     The Court Grants Summary Judgment of No Infringement For All Defendants In the NDCA Litigation. ..................................................... 5

     D.     Cellspin Files A Frivolous Motion To Recuse the NDCA District Court Judge. ............................................................................................ 5

     E.     Cellspin And Its Counsel's Additional Forum-Shopping in the Eastern District of Texas. ..................................................................................... 6

     F.     Cellspin's Counsel's Additional Vexatious Conduct In The EDTX Litigation. ...................................................................................... 7

     G.     The EDTX Grants Nike's Motion To Transfer. .................................................. 10

III.   LEGAL STANDARD ................................................................................................ 11

     A.     Sanctions Against Counsel Under 28 U.S.C. § 1927. ......................................... 11

     B.     Sanctions Under The Court's Inherent Power. .................................................... 12

IV.   ARGUMENT ............................................................................................................. 12

     A.     Cellspin's Counsel Unreasonably and Vexatiously Multiplied The Proceedings Against Nike And Should Be Sanctioned Under Section 1927 ........ 12

     B.     Cellspin And Its Counsel Should Also Be Sanctioned Under The Court's Inherent Authority. .................................................................... 16

     C.     Nike's Fees And Costs Incurred Addressing the Transfer Issues. ....................... 17

V.     CONCLUSION ......................................................................................................... 18

1

## <u>**TABLE OF AUTHORITIES**</u>

2

**Page(s)**

3

**Cases**

4

*In re Apple Inc.*,
   52 F.4th 1360 (Fed. Cir. 2022)..........................................................................................8

5

6

*In re Apple Inc.*,
   979 F.3d 1332 (Fed. Cir. 2020)..........................................................................................8

7

8

*Ashford v. Aeroframe Servs., LLC*,
   No. 2:14-cv-0992, 2020 WL 13439737 (W.D. La. May 29, 2020) ......................................13

9

*B.K.B. v. Maui Police Dep't*,
   276 F.3d 1091 (9th Cir. 2002)...........................................................................................12

10

*Blixseth v. Yellowstone Mountain Club, LLC*,
   796 F.3d 1004 (9th Cir. 2015)..........................................................................11, 12, 17

11

12

*Boyer v. BNSF Railway Co.*,
   824 F.3d 694 (7th Cir. 2016).....................................................................................13, 14

13

14

*Buster v. Greisen*,
   104 F.3d 1186 (9th Cir. 1997)...........................................................................................12

15

16

*Cedar Lane Techs. Inc. v. Blackmagic Design Inc.*,
   No. 20-CV-01302-VC, 2020 WL 6789711 (N.D. Cal. Nov. 19, 2020)................................16

17

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
   927 F.3d 1306 (Fed. Cir. 2019)..........................................................................................4

18

19

*Cellspin Soft v. Fitbit*,
   Case No. 17-cv-05928, Dkt. No. 366...........................................................................5, 15

20

21

*China Healthways Inst., Inc. v. Hsin Ten Enter. USA, Inc.*,
   No. CV 02-5293 LGB, 2003 WL 21982477 (C.D. Cal. Mar. 12, 2003) ..............................14

22

*Christian v. Mattel, Inc.*,
   286 F.3d 1118 (9th Cir. 2002)...........................................................................................12

23

24

*In re Cray Inc.*,
   No. 2017-129, 2017 WL 4201535 (Fed. Cir. Sept. 21, 2017) ...........................................9, 15

25

26

*Finjan, Inc. v. Juniper Networks, Inc.*,
   No. C 17-05659 WHA, 2021 WL 3140716 (N.D. Cal. July 26, 2021) ..................................12

27

*Fink v. Gomez*,
   239 F.3d 989 (9th Cir. 2001).......................................................................................12, 16

28

*Haynes v. City & Cnty. of San Francisco*,
    688 F.3d 984 (9th Cir. 2012) ................................................................................ 11

*John Akridge Co. v. Travelers Cos.*,
    944 F. Supp. 33 (D.D.C. 1996) ....................................................................... 16, 17

*In re Keegan Mgmt. Co., Sec. Litig.*,
    78 F.3d 431 (9th Cir. 1996) ................................................................................ 12

*New Alaska Dev. Corp. v. Guetschow*,
    869 F.2d 1298 (9th Cir. 1989) ...................................................................... 11, 12

*Pentagen Techs. Int'l. Ltd. v. United States*,
    172 F. Supp. 2d 464 (S.D.N.Y. 2001 ................................................................. 13

*Roadway Express, Inc. v. Piper*,
    447 U.S. 752 (1980) ........................................................................................... 12

*Trulis v. Barton*,
    107 F.3d 685 (9th Cir. 1995) .............................................................................. 11

## Statutes

28 U.S.C. § 455 ..................................................................................................... 5

28 U.S.C. §§ 1391 and 1400(b) ............................................................................ 15

28 U.S.C. § 1404 ........................................................................................... *passim*

28 U.S.C. § 1927 ........................................................................................... *passim*

35 U.S.C. § 101 ..................................................................................................... 4

## Other Authorities

Federal Rules of Civil Procedure Rule 72 ...................................................... 10, 16

Local Rule 3-1 ....................................................................................................... 4

Local Rule 3-12 ................................................................................................... 11

DLA Piper LLP (US)
San Diego

-iii-
NIKE, INC.'S MOTION FOR SANCTIONS PURSUANT TO 28 U.S.C. § 1927 AND COURT'S INHERENT AUTHORITY
23-cv-05340-YGR

ACTIVE\1606922140.1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on **March 12, 2024**, at **2:00 p.m. PT**, or as soon thereafter as the matter may be heard by the above-titled Court, located at 1301 Clay Street, Oakland CA 94612, Defendant Nike, Inc. ("Nike") will and hereby does move for an order awarding sanctions pursuant to 28 U.S.C. § 1927 and/or the Court's inherent powers.  Nike seeks sanctions in the amount of Nike's reasonable attorneys' fees and costs incurred in preparing Nike's motion to transfer and other discovery and litigation filings required as a result of the vexatious conduct of lead counsel for Plaintiff Cellspin Soft, Inc. ("Cellspin"), Randall Garteiser of Garteiser Honea PLLC, and Cellspin itself, in Case No. 2:22-cv-00455 filed in the United States District Court, Eastern District of Texas.  Nike seeks sanctions in the amount of $140,273, which is the amount of Nike's reasonable attorneys' fees and costs incurred in transferring this case from the Eastern District of Texas to this District.

## STATEMENT OF RELIEF REQUESTED

Nike hereby seeks an order sanctioning Cellspin's counsel and Cellspin and awarding Nike its reasonable attorneys' fees and costs in the amount of $140,273.

DLA PIPER LLP (US)
SAN DIEGO

-1-
NIKE, INC.'S MOTION FOR SANCTIONS PURSUANT TO 28 U.S.C. § 1927 AND COURT'S INHERENT AUTHORITY
23-cv-05340-YGR
ACTIVE\1606922140.1

1

**MEMORANDUM OF POINTS & AUTHORITIES**

2

**I.      INTRODUCTION AND SUMMARY OF ARGUMENT**

3        Over the past year, Nike has been forced to expend significant time and money transferring

4    this patent infringement case from the Eastern District of Texas ("EDTX")—a venue with no

5    connection whatsoever to the witnesses, evidence or issues in this lawsuit—to this District where

6    it clearly should have been filed in the first place.  Cellspin's decision to file this case in the EDTX

7    and then fight tooth-and-nail to keep it there is the latest in a long list of unreasonable and vexatious

8    litigation tactics employed by Cellspin and its counsel.  Prior admonishments and warnings from

9    the Court have not only gone unheeded, but have only served to make Cellspin and its counsel's

10   behavior more extreme.  Nike thus respectfully requests that the Court sanction Cellspin and its

11   counsel to deter this behavior going forward.

12       In 2017, Cellspin filed a complaint in this District alleging that Nike infringed three

13   Cellspin patents (Case No. 17-cv-05931) (the "NDCA Litigation").  After filing an unsuccessful

14   motion to amend its infringement contentions to inject additional Nike products into that case just

15   as fact discovery was closing, Cellspin filed suit against Nike in the Western District of Texas

16   (Case No. 21-cv-00803) (the "WDTX Litigation") alleging infringement of the same three patents

17   against the same products that it attempted to add to the NDCA Litigation.  However, Cellspin

18   never served that complaint and the case sat dormant for over a year.  In June 2022, the Court

19   granted summary judgment of non-infringement for Nike on all claims in the NDCA Litigation.

20   Cellspin has appealed that judgment, as well as a subsequent ruling from the Court denying

21   Cellspin's post-judgment motion to recuse the NDCA District Judge based on Cellspin's

22   speculative and frivolous accusations of financial conflicts.

23       In November 2022, Cellspin dismissed its WDTX complaint and filed yet another

24   complaint against Nike, this time in the Eastern District of Texas (Case No. 2:22-cv-00455) (the

25   "EDTX Litigation"), alleging infringement of the same three patents against the same products it

26   previously attempted to add to the NDCA Litigation.  Although Cellspin resides in this District,

27   previously sued Nike in this District on the same patents, and failed to identify any witness or other

28   evidence located in the EDTX, Cellspin aggressively pursued its lawsuit in the EDTX in an effort

1   to avoid litigating its claims before this Court.  As a result, Nike incurred significant fees in making

2   a motion to transfer, responding to discovery (including depositions) that Cellspin contended was

3   relevant to the transfer issues, and responding to a slew of repetitive and frivolous motions and

4   briefs that Cellspin filed in an effort to avoid or delay a ruling on Nike's motion to transfer.  In

5   September 2023, the EDTX granted Nike's motion to transfer, but not before Cellspin's tactics

6   forced Nike to incur substantial expense to transfer this case to the venue where it should have

7   been filed (if at all, in view of the lack of merit in Cellspin's claims) in the first place.

8        Cellspin and its counsel have engaged in blatant forum-shopping in an effort to avoid this

9   Court.  While it is perhaps not surprising that Cellspin does not want to litigate in the NDCA in

10  view of the Court's previous order granting Nike's motion for summary judgment on the same

11  patents and Cellspin's and its counsel's own extreme conduct in seeking to recuse the District

12  Judge, that does not excuse or justify forum-shopping.

13       In short, this case never should have been filed in the EDTX, and Cellspin's and its

14  counsel's decision to pursue its lawsuit in that venue is precisely the kind of vexatious litigation

15  conduct that supports an award of sanctions against Cellspin's counsel under 28 U.S.C. § 1927

16  and/or an award of sanctions against both Cellspin and its counsel under the Court's inherent

17  powers.  Sanctions will help compensate Nike and deter this type of behavior by Cellspin, its

18  lawyers, and future litigants and attorneys who might employ a similar litigation strategy.  Nike

19  thus respectfully requests that its motion be granted and that the Court award sanctions against

20  Cellspin's counsel and Cellspin in an amount equal to the attorneys' fees and costs Nike was forced

21  to incur to transfer this case to this District.

22  **II.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

23       **A.     Cellspin's Original Lawsuit Against Nike In This District.**

24       In October 2017, Cellspin filed suit in this District against Nike and 12 other defendants

25  (Case No. 17-cv-05931; the "NDCA Litigation" or "NDCA Lit.") alleging patent infringement.

26  NDCA Lit., Dkt. No. 1.  Cellspin asserted three patents against Nike:  U.S. Patent Nos. 8,738,794;

27  8,892,752; and 9,749,847 (the "Asserted Patents").  Cellspin alleged that it "is a California

28  corporation with an office and place [sic] business at 1410 Mercy Street, Mountain View,

California 94041." *Id.* at ¶ 2.  In January 2018, Cellspin served its Initial Disclosures identifying the three named inventors on the Asserted Patents—Gurvinder Singh (Cellspin's CEO), Vincent Laviano, and Marcos Klein—as relevant witnesses residing in this District.  Declaration of Richard Mulloy ("Mulloy Decl."), Ex. A.

Several Defendants filed a motion to dismiss Cellspin's complaints in the NDCA Litigation on the grounds that the Asserted Patents are not patent eligible under 35 U.S.C. § 101 (NDCA Lit., Dkt. No. 28), and in April 2018, the court granted the motion to dismiss.  NDCA Lit., Dkt. No. 67. After Cellspin appealed the order, the Federal Circuit affirmed that the claims were directed to an abstract idea but remanded for further proceedings to determine patent eligibility.  *See Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1314-19 (Fed. Cir. 2019).

In June 2020, following remand, Cellspin served its Patent Local Rule 3-1 Infringement Contentions accusing three different Nike product lines of infringing all three Asserted Patents. NDCA Lit., Dkt. No. 116 at 2.  Nearly one year later, in May 2021, Cellspin moved to amend its infringement contentions to add additional Nike products—the Nike Adapt line of shoes ("Nike Adapt")—to the litigation just two months prior to the scheduled close of fact discovery.  NDCA Lit., Dkt. No. 157.  The Court denied Cellspin's motion on August 3, 2021, finding that Cellspin "was not diligent" and failed to demonstrate good cause to support adding the Nike Adapt products to the case.  NDCA Lit., Dkt. No. 172 at 2.  Specifically, the Court noted that the Nike Adapt products were publicly disclosed more than a year before Cellspin served its Infringement Contentions, that Cellspin provided no legitimate reason for failing to identify the Nike Adapt products earlier, and that allowing Cellspin to inject the new products into the case at that juncture would prejudice Nike.  *Id.* at 2-4.

**B.      Cellspin And Its Counsel's Forum-Shopping in the Western District of Texas.**

Just hours after the Court denied Cellspin's motion for leave to amend its infringement contentions to add the Nike Adapt products, Cellspin filed suit against Nike in the Western District of Texas, Waco Division (Case No. 21-cv-00803; the "WDTX Litigation").  WDTX Lit., Dkt. No. 1.  Cellspin's WDTX complaint alleged infringement of the same three Asserted Patents and targeted the same Nike Adapt product line that Cellspin had attempted to add to the NDCA

1   Litigation.  *Id.*  Although Cellspin filed suit in the WDTX, there was no allegation that Cellspin or

2   any of its principals had moved from California to Texas.  *See id.*  Nor did Cellspin identify any

3   reason that the case should be venued in the WDTX, other than the existence of Nike retail

4   locations in that District.  *Id.* at ¶ 7.  Although Cellspin rushed to file its WDTX Complaint after

5   receiving the Court's Order denying leave to amend its contentions in the NDCA Litigation,

6   Cellspin never served the complaint, and the case sat dormant for more than a year.

7          **C.      The Court Grants Summary Judgment of No Infringement For All
                      Defendants In the NDCA Litigation.**

8

9          Meanwhile, the NDCA Litigation proceeded to a judgment on the merits.  After completing

10  fact and expert discovery, Nike (and all other remaining Defendants) moved for summary judgment

11  of non-infringement on each asserted claim of the Asserted Patents.  In June 2022, the Court granted

12  Nike's (and the other Defendants') motion for summary judgment on multiple, independent

13  grounds for each asserted patent claim.  NDCA Lit., Dkt. No. 219.  Nike (and another Defendant)

14  moved for attorneys' fees.  *Id.* at Dkt. No. 225.  Although the Court noted that Cellspin was

15  "publicly rebuked" for conduct unbefitting a litigant several times during the litigation, and that the

16  Court "provided Cellspin with notice that any such future conduct could result in sanctions," the

17  Court declined to find the case exceptional and denied Nike's motion for attorneys' fees.  NDCA

18  Lit., Dkt. No. 246 at 9.  Cellspin appealed the Court's summary judgment ruling to the Federal

19  Circuit.  Briefing on the appeal has been completed but oral argument has not yet been scheduled.

20         **D.      Cellspin Files A Frivolous Motion To Recuse the NDCA District Court Judge.**

21         On January 20, 2023—more than six months *after* judgment in the NDCA Litigation was

22  entered in Nike's and the other Defendants' favor—Cellspin filed a motion to recuse the District

23  Judge and to vacate the judgment against all Defendants in the NDCA Litigation.  *See Cellspin Soft*

24  *v. Fitbit,* Case No. 17-cv-05928, Dkt. No. 366.  The crux of Cellspin's motion was its argument

25  that the District Judge should have recused herself from the NDCA Litigation under 28 U.S.C. §

26  455 as a result of her husband's alleged financial connections with Google (which had acquired

27  Defendant Fitbit two years before Cellspin's motion was filed) and her investments in various

28  mutual or common funds (such as the Vanguard 500 index fund) that included stock of one or more

DLA PIPER LLP (US)
SAN DIEGO

NIKE, INC.'S MOTION FOR SANCTIONS PURSUANT TO 28 U.S.C. § 1927 AND COURT'S INHERENT AUTHORITY
23-cv-05340-YGR
ACTIVE\1606922140.1

1   Defendants.  *Id.* at 3-8, 14-22.  In February 2023, the Court denied Cellspin's motion.  *See* NDCA

2   Lit., Dkt. No. 254.  The Court noted that Cellspin's motion "not only demonstrates a measure of

3   desperation, but is divorced from the law and the facts," that the motion was "plagued by myriad

4   procedural deficiencies," and that Cellspin's arguments were "extreme and meritless."  *Id.* at 2.  In

5   short, the Court found that the motion lacked any factual or legal merit, and that "one can only

6   surmise that plaintiff and its lawyers brought the motion for tactical advantage."  *Id.* at 18.  Cellspin

7   also appealed that ruling to the Federal Circuit in the *Fitbit* litigation.  Briefing on that aspect of

8   Cellspin's appeal has also been completed but oral argument has not yet been scheduled.

9       **E.**    **Cellspin And Its Counsel's Additional Forum-Shopping in the Eastern District of Texas.**

10

11       The WDTX Litigation that Cellspin filed in August 2021 sat dormant for more than a year

12   until Cellspin dismissed the action in November 2022, having never served the complaint.  That

13   same day, Cellspin filed suit in the Eastern District of Texas, Marshall Division (Case No. 2:22-

14   cv-00455; the "EDTX Litigation" or "EDTX Lit.") alleging infringement of the same three

15   Asserted Patents against the same Nike Adapt products. EDTX Lit., Dkt. No. 1.  As with Cellspin's

16   WDTX complaint, there was no allegation that Cellspin or any of its principals were located in the

17   EDTX.  To the contrary, Cellspin alleged that it is a "corporation with an office and place [sic]

18   business at 2784 Homestead Rd PMB 116, Santa Clara CA 95051."  *Id.* at ¶ 2.  With respect to

19   venue, Cellspin alleged that Nike has "at least one" retail location in the District.  *Id.* at ¶ 12.

20       Before filing its response to the EDTX complaint, Nike's counsel sent Cellspin's counsel

21   a letter advising that Nike would be filing a motion to transfer under 28 U.S.C. § 1404 and intended

22   to seek sanctions against Cellspin's counsel under 28 U.S.C. § 1927 and the Court's inherent

23   powers for the expenses related to transfer.  Mulloy Decl., Ex. B.  That same day, Cellspin's

24   counsel responded via e-mail and offered to further extend Nike's time to respond to Cellspin's

25   complaint "in order to allow us time to vet these arguments being made by Apple [sic]"[1] and

26   "resolv[e] this potential misunderstanding."  *Id.*, Ex. C.  Nike accepted Cellspin's proposal in the

27

28

---

[1] Neither Apple nor its products are involved in this litigation.  It is not clear why Cellspin was referring to Apple.

1    hopes that the parties could agree on a streamlined procedure to transfer the case to the NDCA

2    without incurring additional expense, but Cellspin's counsel never provided a substantive response

3    addressing the issues raised in Nike's pre-motion letter.  As a result, on January 27, 2023, Nike

4    filed a motion to transfer under Section 1404.  *Id.*, Ex. D.

5          Cellspin's briefing in response to Nike's motion underscored that Cellspin's venue

6    arguments lacked any merit.  *See id.*, Ex. E.  For example, Cellspin failed to identify (a) *any* party

7    witness who resided in the EDTX, (b) *any* non-party witness who resided in the EDTX, or (c) *any*

8    other evidence present in the EDTX.  *Id.*  And with respect to the prior NDCA Litigation between

9    the parties involving the exact same Asserted Patents, Cellspin misleadingly argued that transfer

10   should be denied because "nearly six years have passed in the NDCA action, and there *still* has

11   been no trial," *id.* at 1 (emphasis in original), while neglecting to mention the reason there had

12   "been no trial" was because this Court granted summary judgment against Cellspin on all claims.

13   Cellspin also argued (contrary to the facts and the law) that "Nike [made] no effort to identify any

14   specific evidence" located in the NDCA in its motion, that the location of party witnesses did not

15   support transfer because "party witnesses are secondary to experts" in the transfer analysis, and

16   that other lawsuits involving Nike that had been filed in the EDTX and other jurisdictions somehow

17   weighed against transfer of this case.  *Id.* at 4, 6-7.

18         **F.    Cellspin's Counsel's Additional Vexatious Conduct In The EDTX Litigation.**

19         Following completion of the briefing on Cellspin's motion to transfer, Cellspin doubled-

20   down on its baseless positions and engaged in a campaign of repetitive and meritless briefing

21   designed to avoid or delay a ruling on Nike's motion to transfer.  This included, but is not limited

22   to, the following:

23         •    <u>First</u>, although Cellspin did not argue that it needed any venue discovery in

24   connection with its opposition to Nike's motion to transfer, Cellspin aggressively pursued

25   depositions of several Nike employees in order to test the "credibility" of Nike's transfer

26   arguments.  *See, e.g.,* Mulloy Decl., Ex. H at 3 ("Nike refusing to allow Cellspin to take any

27   depositions, appears to have more to do with Nike's concern about the Court denying Nike's

28   pending convenience venue transfer motion…").  Of course, Cellspin had already conducted

extensive discovery of Nike in connection with the previous NDCA Litigation (including a deposition of Jon Gale, who submitted a declaration in support of Nike's motion to transfer) and knew that Nike's research and development activities took place in Oregon (as set forth in Mr. Gale's declaration), not in the EDTX.  In July and August 2023, Cellspin pushed forward with the depositions it claimed to need (Mr. Gale, Jacob Furniss and Jordan Rice) to purportedly address the venue issues raised by Nike's motion.

- Second, in July 2023, Cellspin filed what it styled as a "Motion for Leave to File a 5-Page Additional Information Document in Support of Its Opposition to Nike's Motion to Transfer Based on Convenience."  Mulloy Decl., Ex. I.  In its motion, Cellspin argued that it should be allowed to file additional briefing on Nike's motion to transfer (despite having already filed an opposition and sur-reply in response to the motion) *after* conducting extensive e-mail discovery of Nike and its employees.  "Cellspin wants to verify the declaration of Jon Gale (Dkt. No. 12-1) with the email specific production Nike has already agreed to provide in the eDiscovery Order…"[2]  *Id.* at 4.  Significantly, Cellspin cited no legal authority for its request that the EDTX Court prioritize e-mail discovery over transfer, which is directly contrary to Federal Circuit guidance.  *See, e.g., In re Apple Inc.*, 979 F.3d 1332, 1337 (Fed. Cir. 2020) ("Although district courts have discretion as to how to handle their dockets, once a party files a transfer motion, disposing of that motion should unquestionably take top priority.");  *In re Apple Inc.*, 52 F.4th 1360, 1363 (Fed. Cir. 2022) (directing district court "to postpone fact discovery and other substantive proceedings until after consideration of [a] motion for transfer").

- Third, although Cellspin's previous motion was styled as a "motion for leave" to file additional briefing, Cellspin essentially converted its reply brief in support of that motion into

---

[2] Although Cellspin had not yet served any proposed e-mail discovery search terms at that time, the proposed terms Cellspin eventually provided to Nike were consistent with Cellspin's overall approach to the litigation—indiscriminate and not tied to the merits of the transfer dispute or even the merits of the case.  Among other terms, Cellspin requested that Nike conduct e-mail searches of multiple employees using the following generic terms:  "testing," "data," "upload", "test plan", "user", "connect" and "privacy."  Mulloy Decl., Exs. P, Q.  Cellspin's proposed terms yielded hundreds of thousands of e-mail hits.  Despite aggressively pursuing its e-mail discovery requests while the case was pending in the EDTX, Cellspin withdrew its e-mail discovery requests after Nike's motion to transfer to the NDCA was granted.  *Id.*, Ex. R.

the additional 5-page transfer brief it was purportedly seeking permission to file.  *See* Mulloy Decl., Ex. J.  In its reply brief, Cellspin repeated many of the same arguments from its transfer opposition, made new transfer arguments based on its mischaracterization of Mr. Gale's testimony, and even went so far as to request the additional, extreme relief that Nike be "ordered to appear at an Order to Show Cause hearing within 20 days of this Order to explain why sanctions should not be imposed in the form of denying Nike's motion to transfer venue under Section 1404 and why the Court should not Order Nike to reimburse Cellspin for its costs and fees in defending against Nike's motion…"  *Id*. at 3-5, 26 (Dkt. No. 58-4).  Not stopping there, Cellspin made additional frivolous arguments that it did not previously make in its transfer opposition.  For example, Cellspin argued for the first time that "Nike has failed to demonstrate that Cellspin could have brought this lawsuit for patent infringement against Nike in the Northern District of California to begin with."  Mulloy Decl., Ex. J at 2.  Significantly, Cellspin never made that argument in its transfer opposition, presumably because Cellspin *had previously filed the NDCA Litigation against Nike* on the same Asserted Patents.  Cellspin then represented to the Court that venue law changed since it filed its initial complaint in the NDCA Litigation on account of the Supreme Court's May 2017 decision in *TC Heartland* and the Federal Circuit's September 2017 decision in *In re Cray* (*see id.*), while ignoring that its October 2017 NDCA Litigation complaint against Nike was filed *after* the Supreme Court's decision in *TC Heartland* and the Federal Circuit's decision in *Cray*.  This was indicative of the type of baseless factual and legal arguments Cellspin advanced regarding transfer throughout the EDTX Litigation.

- Underline: **Fourth**, in September 2023, Cellspin filed yet another motion related to the pending transfer motion.  Cellspin's latest installment was styled as a "Motion to Strike Paragraphs 12 and 13 of Jon Gale's Declaration In Support of Nike's Section 1404 Motion to Transfer Venue, Or In the Alternative, Motion to Compel Live Testimony From Nike's Declarant Jon Gale That Submitted A Declaration To This Court In Support Of Nike's Convenience Transfer Motion."  Mulloy Decl., Ex. K.  Of course, Cellspin had *already* requested that the Court strike Mr. Gale's declaration in its previous briefing filed weeks before.  *See* Mulloy Decl., Ex. J at 26 (Dkt. No. 58-4).  In this latest motion, Cellspin's counsel repeated the same mischaracterizations of Mr. Gale's

-9-

testimony and the same arguments it had already made multiple times regarding Mr. Gale's credibility, and further requested that Mr. Gale be ordered to appear in Marshall to provide live testimony even though Cellspin had already submitted any relevant portions of his deposition transcript to the Court.  Mulloy Decl., Ex. K at 5, 8.  Notably, Cellspin's latest request to strike portions of Mr. Gale's deposition was made eight months after Mr. Gale's declaration was submitted with Nike's motion to transfer, seven months after Cellspin filed its opposition to that motion, and nearly two months after Cellspin took Mr. Gale's deposition.  This was nothing more than an additional delay tactic designed to further increase Nike's costs to defend itself in this matter and to inundate the EDTX Court with paper in an effort to postpone a ruling on Nike's transfer motion.

In short, between June 2023 and September 2023, Cellspin filed multiple motions and other briefs seeking second, third and fourth bites at the transfer apple, and asking the EDTX Court to either deny the motion and sanction Nike, or at least further delay its ruling on that motion.  *See, e.g.,* EDTX Lit., Dkt. Nos. 38, 39, 44, 45, 49, 55, 57, 58, 60, 62.  In doing so, Cellspin repeatedly advanced frivolous arguments, mischaracterized the facts, and misrepresented the law.

### G.    The EDTX Grants Nike's Motion To Transfer.

On September 26, 2023—eight months after Nike's motion to transfer was filed—Magistrate Judge Payne issued an order granting Nike's motion to transfer the case from the EDTX to this District.  Mulloy Decl., Ex. L.  In doing so, the Court found that *none* of the factors considered in the Section 1404 analysis supported Cellspin's argument to keep the case in the EDTX, while several factors (ease of access to sources of proof, availability of compulsory process, and other practical problems) supported transfer to the NDCA.  *Id.* at 3-8.  As a result, the Court concluded that "the NDCA is a clearly more convenient forum" and ordered transfer of the case.  *Id.* at 10.

Under Rule 72 of the Federal Rules of Civil Procedure, Cellspin had 14 days to object to the Magistrate Judge's decision.  Cellspin never filed any timely objection.  But that did not mean Cellspin intended to stop litigating the transfer issues in the EDTX.  Instead, more than two weeks after the Magistrate Judge's order issued, Cellspin filed a procedurally defective and substantively

-10-

1    meritless "motion for reconsideration" of the Magistrate Judge's Order in an effort to further delay

2    transfer.  Mulloy Decl., Ex. M.  Cellspin's motion failed to provide any justification or authority

3    for the timing of its motion, did not even address the legal standard for reconsideration, and relied

4    entirely on arguments that Cellspin had previously made in either its opposition to Nike's motion

5    to transfer or in the litany of other briefs Cellspin filed regarding the transfer issue.  *Id.* at 3-4.

6    Nike thus had to incur the additional cost of opposing Cellspin's latest motion related to the transfer

7    issues.  Mulloy Decl., Ex. N.  In October 2023, the EDTX transferred the case to this District where

8    it clearly should have been filed (if at all) in the first instance.  *See id.*, Ex. O.  On December 12,

9    2023, after Nike filed an opposed Administrative Motion to Consider Whether Cases Should be

10   Related Pursuant to Civil Local Rule 3-12, this case was deemed related to the prior NDCA

11   Litigation and reassigned to this Court.  Dkt. Nos. 77-78.

12       All in all, the litigation conduct of Cellspin and its counsel resulted in nearly a year of

13   litigation in the EDTX, much of which was spent responding to Cellspin's repetitive and meritless

14   arguments attempting to avoid or delay a ruling on Nike's motion to transfer to this District.

15   **III.    LEGAL STANDARD**

16       **A.    Sanctions Against Counsel Under 28 U.S.C. § 1927.**

17       "Any attorney…who so multiplies the proceedings in any case unreasonably and

18   vexatiously may be required by the court to satisfy personally the excess costs, expenses, and

19   attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. § 1927.  The purpose of

20   § 1927 is to deter attorney misconduct and to compensate the victims of an attorney's malfeasance.

21   *Haynes v. City & Cnty. of San Francisco,* 688 F.3d 984, 987 (9th Cir. 2012).  Section 1927's "use

22   of the word 'may'—rather than 'shall' or 'must'—confers substantial leeway on the district court

23   when imposing sanctions.  Thus, with § 1927 as with other sanctions provisions, '[d]istrict courts

24   enjoy much discretion in determining whether and how much sanctions are appropriate.'"  *Id.* at

25   987 (quoting *Trulis v. Barton*, 107 F.3d 685, 694 (9th Cir. 1995)).

26       "Sanctions pursuant to section 1927 must be supported by a finding of subjective bad faith."

27   *Blixseth v. Yellowstone Mountain Club, LLC,* 796 F.3d 1004, 1007 (9th Cir. 2015) (quoting *New

28   Alaska Dev. Corp. v. Guetschow,* 869 F.2d 1298, 1306 (9th Cir. 1989)).  The Ninth Circuit has

1   explained that "[b]ad faith is present when an attorney knowingly or recklessly raises a frivolous

2   argument or argues a meritorious claim for the purpose of harassing an opponent." *Id.* (quoting

3   *New Alaska Dev.,* 869 F.2d at 1306); *accord B.K.B. v. Maui Police Dep't,* 276 F.3d 1091, 1107

4   (9th Cir. 2002).  A frivolous filing is both "(1) . . . legally or factually 'baseless' from an objective

5   perspective, and (2) [where] the attorney has [not] conducted 'a reasonable and competent inquiry'

6   before signing and filing it."  *Christian v. Mattel, Inc.,* 286 F.3d 1118, 1127 (9th Cir. 2002)

7   (quoting *Buster v. Greisen,* 104 F.3d 1186, 1190 (9th Cir. 1997).

8       **B.      Sanctions Under The Court's Inherent Power.**

9           Federal courts also have the inherent authority to impose sanctions on litigants and

10   attorneys.  "Under its inherent powers . . . a district court may levy fee-based sanctions when a

11   party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, delaying or

12   disrupting litigation, or has litigated for an improper purpose."  *Finjan, Inc. v. Juniper Networks,*

13   *Inc.*, No. C 17-05659 WHA, 2021 WL 3140716, at *4 (N.D. Cal. July 26, 2021) (citing *Roadway*

14   *Express, Inc. v. Piper*, 447 U.S. 752, 762 (1980)), *aff'd sub nom. Finjan, LLC v. Juniper Networks,*

15   *Inc.,* No. 2021-2253, 2022 WL 17576350 (Fed. Cir. Dec. 12, 2022).  The imposition of sanctions

16   under a court's inherent powers requires bad faith or "conduct tantamount to bad faith." *Id.* at *4.

17   As stated above, "bad faith is present when an attorney knowingly or recklessly raises a frivolous

18   argument . . . "  *In re Keegan Mgmt. Co., Sec. Litig.,* 78 F.3d 431, 436 (9th Cir. 1996) (quotation

19   omitted).  The Court may award sanctions against either a litigant or its counsel under the Court's

20   inherent powers.  *See, e.g., Fink v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2001); *Roadway Express*,

21   447 U.S. at 765 (noting that a court "certainly may assess [sanctions] against counsel who willfully

22   abuse judicial processes.").

23   **IV.     ARGUMENT**

24       **A.      Cellspin's Counsel Unreasonably and Vexatiously Multiplied The
25                 Proceedings Against Nike And Should Be Sanctioned Under Section 1927.**

26           Cellspin's lead counsel, Mr. Garteiser, should be sanctioned under Section 1927 because

27   his vexatious litigation conduct has multiplied these proceedings against Nike.  Sanctions should

28   be awarded for at least three reasons.

First, counsel engaged in blatant forum-shopping by filing the EDTX Litigation (after filing and dismissing the WDTX Litigation) and attempting to pursue Cellspin's claims regarding the Asserted Patents in that District.  Cellspin previously and unsuccessfully litigated for years against Nike in the NDCA Litigation regarding the same Asserted Patents.  And then after Cellspin lost, it filed a factually and legally meritless motion to recuse the District Judge.  But neither Cellspin's failure to prove its case in the previous NDCA Litigation nor its filing of a frivolous, post-judgment motion attacking the integrity of the Court provides a license for Cellspin to pursue its claims regarding the same Asserted Patents in a forum that has no connection or interest in this case.  Indeed, courts have awarded Section 1927 sanctions based on forum-shopping.  *See, e.g., Boyer v. BNSF Railway Co.*, 824 F.3d 694, 697, 700, 710 (7th Cir. 2016) (reversing district court's denial of sanctions under § 1927 where "plaintiffs' counsel unreasonably and vexatiously multiplied the proceedings by filing suit [in the second forum], which had absolutely no connection to this case…in the hopes of finding a bench that was more receptive to its claims"; and explaining that prior cases "cited forum-shopping as one reason among several sustaining the imposition of section 1927 sanctions"); *Pentagen Techs. Int'l. Ltd. v. United States*, 172 F. Supp. 2d 464, 473-74 (S.D.N.Y. 2001) (finding sanctions pursuant to § 1927 appropriate where litigant filed successive lawsuits with identical claims that were "designed to evade previous rulings"); *Ashford v. Aeroframe Servs., LLC*, No. 2:14-cv-0992, 2020 WL 13439737, at *19 (W.D. La. May 29, 2020) ("fil[ing] multiple lawsuits against the same defendants alleging identical causes of action in furtherance of their forum shopping does indeed constitute unreasonable and vexatious multiplication of the proceedings as contemplated by 28 U.S.C. § 1927.").

Second, Cellspin's counsel's various briefs in response to the transfer motion further underscored that its decision to file in the EDTX was factually and legally baseless.  Indeed, Cellspin's own opposition identified just one factor considered by courts in the Section 1404 transfer analysis that Cellspin claimed weighed against transfer—the "other practical problems" factor.  *See* Mulloy Decl., Ex. E at 7-8.  But even Cellspin's argument for that factor was highly misleading.  Cellspin argued that this factor weighed against transfer because "given that the parties have litigated in the Northern District of California for 6 years without a trial . . . the Eastern

-13-

1   District of Texas is plainly more efficient." *Id.* at 8.  Of course, the reason there was no trial in the

2   NDCA Litigation had nothing to do with a lack of efficiency—it was because the Court had

3   determined that Cellspin had failed to provide evidence that could allow its claims to survive

4   summary judgment.  In any event, the EDTX order granting Nike's motion to transfer confirmed

5   there was no objective basis for filing in that District—the Court found that three of the Section

6   1404 factors weighed in favor of transfer to the NDCA, *none* of the factors weighed in favor of

7   keeping the case in the EDTX, and that the totality of circumstances confirmed that "the NDCA is

8   a clearly more convenient forum."  Mulloy Decl., Ex. L at 10.  Under these circumstances,

9   sanctions are appropriate and necessary. *See Boyer*, 824 F.3d at 709-710 ("The plaintiffs' counsel

10  could not have reasonably believed that his choice of venue would survive…a section 1404(a)

11  motion to transfer the case…"); *China Healthways Inst., Inc. v. Hsin Ten Enter. USA, Inc.*, No.

12  CV 02-5293 LGB (JWJx), 2003 WL 21982477, at *13-*14 (C.D. Cal. Mar. 12, 2003) ("[T]he

13  Court concludes that in opposing Plaintiff's motion to dismiss or transfer the New York Action,

14  Defendant knowingly raised a frivolous argument.  Such conduct subjects Defendant to sanctions

15  under 28 U.S.C. § 1927 [and the Court's inherent powers]").

16         In addition, Cellspin's subsequent briefs regarding the transfer issues raised objectively

17  frivolous arguments that were contrary to the facts and the law. *See Boyer*, 824 F.3d at 708 ("[i]f

18  a lawyer pursues a path that a reasonably careful attorney would have known, after appropriate

19  inquiry, to be unsound, the conduct is objectively unreasonable and vexatious").  For example,

20  Cellspin argued in one of its many briefs that "Nike has failed to demonstrate that Cellspin could

21  have brought this lawsuit for patent infringement against Nike in the Northern District of California

22  to begin with" even though Cellspin failed to advance this frivolous position in its opposition to

23  Nike's motion to transfer.  Mulloy Decl., Ex. J at 2.  Nor could there be any legitimate factual or

24  legal basis for any such argument since Cellspin had *already sued Nike in this District* in the

25  previous NDCA Litigation between the parties and Nike did not challenge venue in that case.

26  Recognizing as much, Cellspin advanced another factually and legally frivolous argument in an

27  effort to explain why it previously sued Nike in this District on the same Asserted Patents in

28  October 2017 but purportedly could not have sued Nike on the same patents in this District in

-14-

November 2022:  "While Cellspin did sue Nike in 2017 in California with other defendants, Cellspin never established that Nike had a brick and mortar business in that venue, which is now a post *TC-Heartland* requirement articulated by the Federal Circuit under §1400(b).  *See In re Cray Inc.*, No. 2017-129, 2017 WL 4201535, at *4 (Fed. Cir. Sept. 21, 2017)."  Mulloy Decl., Ex. J at 2.  But Cellspin's additional argument was also legally baseless because the Supreme Court's decision in *TC Heartland* (May 2017) and the Federal Circuit's decision in *In re Cray* (September 2017) undeniably occurred *before* Cellspin filed its initial complaint against Nike in October 2017. Cellspin's argument was also factually baseless because Cellspin did, in fact, allege in its Amended Complaint filed in the NDCA Litigation that Nike had physical stores in the NDCA.  "Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400(b), including because Nike has at least one regular and established place of business, including Nike Stores and/or Nike Outlet Stores, in this District and in California. . . ."  NDCA Lit., Dkt.  49 at ¶ 7.  Moreover, Nike *admitted* that fact in its Answer.  NDCA Lit., Dkt. 94 at ¶ 7 ("Nike admits that venue is proper in this Court with respect to this action.  Nike admits that it has stores in this District and in California.").

There can be no doubt that Cellspin's counsel knew these transfer arguments were factually and legally baseless when made or, at a minimum, that it was reckless for counsel to make such arguments.  Indeed, even a cursory investigation of the law and the procedural history in a case in which he was counsel of record would have revealed to counsel that these arguments were frivolous.  Unfortunately, this conduct was par for this course with respect to the transfer issues in the EDTX Litigation, just as it was with respect to several other issues in the previous Cellspin NDCA Litigation.  *See, e.g.,* NDCA Case No. 17-cv-05928 (consolidated Cellspin cases), at Dkt. No. 239 at 3 (Court noting that "Plaintiff s counsel made inappropriate objections"); Dkt. No. 335 (Dec. 16, 2021 Hearing Transcript) at 17:4-18:2 (Court expressing "concern" regarding Cellspin's counsel's "mode of practice" for signing a declaration for a witness without informing that witness); Dkt. No. 270 at 2 (Court finding that Cellspin's counsel made "inappropriate representations to the Court regarding the preparation of an expert report," that counsel's behavior "constitute[d] improper conduct," and admonishing Cellspin that "any future misconduct is sanctionable").  Despite these warnings, Cellspin's counsel's conduct has become even more extreme since

-15-

judgment was entered in Nike's favor in the NDCA Litigation, and there is no reason to believe this conduct will stop unless deterred through sanctions.

_Third_, the entire record in the EDTX Litigation underscores that counsel's litigation strategy was a bad faith effort to avoid or delay a ruling on Nike's motion to transfer. Cellspin (1) filed meritless briefs filled with baseless factual and legal arguments; (2) repeated those arguments over and over again by filing multiple motions and briefs directed to the transfer issues for months after the transfer briefing was completed (not including replies in support of those motions or separate motions for hearing on its multiple motions, all of which Cellspin treated as opportunities to reargue the transfer issues); and (3) asked the Court to delay its ruling on Nike's motion while Cellspin conducted depositions and even e-mail discovery that it contended was relevant to the transfer issues. _See, e.g.,_ Mulloy Decl., Exs. I, K, M. Cellspin's counsel's months-long pattern of behavior culminated with a procedurally defective and substantively meritless "motion for reconsideration" after Cellspin's counsel inexplicably missed the Rule 72 deadline to object to the EDTX Magistrate Judge's order transferring the case, which simply repeated the same arguments Cellspin had previously made in its litany of previous briefs and only added to the expense of litigating the transfer issues. _Id._, Ex. M. Although Section 1927 is understandably reserved for extreme conduct, the conduct of Cellspin's counsel more than fits the bill and should be sanctioned to compensate Nike and deter this type of behavior going forward.

**B.** **Cellspin And Its Counsel Should Also Be Sanctioned Under The Court's Inherent Authority.**

For the same reasons, sanctions should also be awarded against Cellspin and its counsel under the Court's inherent power. Cellspin and its counsel acted in bad faith with indifference for the consequences of their actions throughout the EDTX Litigation with respect to the transfer issues. "Courts can also impose monetary sanctions under their inherent authority if an attorney acts in bad faith or engages in conduct 'tantamount to bad faith.'" _Cedar Lane Techs. Inc. v. Blackmagic Design Inc._, No. 20-CV-01302-VC, 2020 WL 6789711, at *3 (N.D. Cal. Nov. 19, 2020) (quoting _Fink v. Gomez_, 239 F.3d at 994. Cellspin and its counsel acted in bad faith and engaged in blatant forum-shopping to try and avoid litigating in this Court. _See John Akridge Co._

-16-

*v. Travelers Cos.*, 944 F. Supp. 33, 34 (D.D.C. 1996) (sanctioning plaintiff for acting in bad faith by "filing this suit with the intent to improperly circumvent the Court's ruling in their previous case"). And Cellspin's gamesmanship did not end with its efforts to find a court that it believed would be more friendly to its claims; to the contrary, that was only the beginning. Cellspin then compounded the problem by embarking on a series of frivolous and duplicative filings designed to avoid or delay a ruling on Nike's motion to transfer. *See Blixseth*, 796 F.3d at 1007 (stating "[b]ad faith is present when an attorney knowingly or recklessly raises a frivolous argument or argues a meritorious claim for the purpose of harassing an opponent"). Cellspin's repeated filings echoed the same meritless arguments opposing transfer and dramatically increased the cost of the litigation. This is precisely the type of litigation conduct that can and should be deterred with sanctions.

### C.    Nike's Fees And Costs Incurred Addressing the Transfer Issues.

Nike requests that the Court sanction Cellspin and its counsel and order them to pay Nike's reasonable fees and costs incurred in addressing the transfer issues that were a direct result of Cellspin and its lawyers' decision to file in the EDTX instead of this District. This includes the fees and costs associated with preparing the briefs and other papers in support of Nike's motion to transfer, responding to the various frivolous motions and briefs filed by Cellspin directed to the transfer issues, preparing for and defending the deposition of Jon Gale that Cellspin contended was highly relevant to Nike's motion to transfer, and preparing a motion to stay claim construction and other deadlines pending resolution of the transfer issues. To be clear, Nike is *not* seeking all of its fees and costs incurred in connection with defending Cellspin's lawsuit filed in the EDTX. For example, Nike is not seeking fees or costs spent analyzing non-infringement defenses or analyzing prior art and preparing invalidity contentions. Nor is Nike seeking fees or costs incurred in making or opposing discovery motions filed in the EDTX, or preparing for and defending depositions of Nike witnesses other than Mr. Gale, even though these tasks overlap with the transfer issues and were required as a result of Cellspin and its counsel's conduct. As a result, Nike requests that Cellspin and its counsel be sanctioned in the amount of $140,273, which are Nike's reasonable fees and costs incurred in connection with the transfer issues. Mulloy Decl., ¶¶ 4-19.

1

## V.     CONCLUSION

2        Neither Nike nor its counsel takes a request for sanctions lightly.  However, the conduct in

3   this case is extreme and falls squarely within the confines of Section 1927 and the Court's inherent

4   authority to deter this type of behavior.  Cellspin and its counsel were admonished multiple times

5   for their behavior in the previous NDCA Litigation and the Court ultimately found that Cellspin

6   failed to prove its case on the merits.  Despite receiving multiple chances to adjust their behavior,

7   Cellspin and its counsel responded by filing a meritless post-judgment motion to recuse the District

8   Judge and filing this lawsuit against Nike in the EDTX in a clear effort to avoid litigating in this

9   Court.  Cellspin filed its complaint in the EDTX despite knowing that District had no connection

10  whatsoever to the parties, the witnesses, the evidence, or any of the issues in the case.  Cellspin

11  and its lawyers then doubled-down on their forum-shopping by engaging in a months-long pattern

12  of filing repetitive and frivolous motions and briefs in an effort to avoid or delay a ruling on Nike's

13  motion to transfer, keep the case in the EDTX, and increase the cost of this litigation to Nike, all

14  in an effort to extract a settlement.  Nothing that has occurred in the past year of litigation—or

15  even the past six years of litigation—has provided any reason to believe that Cellspin or its counsel

16  will adjust their behavior without sanctions.  Indeed, repeated warnings and admonishments of

17  Cellspin and its counsel in Court orders and during hearings have only served to make their conduct

18  even more extreme.

19        For these reasons, Nike respectfully requests the Court grant Nike's motion and sanction

20  Cellspin's counsel and Cellspin in an amount equivalent to Nike's reasonable attorneys' fees and

21  costs incurred in connection with transferring the case from the EDTX to this District.

22    Dated:  February 1, 2024              DLA PIPER LLP (US)

23

24                                          By /s/ Richard T. Mulloy
                                               RICHARD T. MULLOY
25                                             EDWARD H. SIKORSKI
                                               PETER MAGGIORE
26                                             CATHERINE HUANG
                                               Attorneys for Defendant
27                                             NIKE, Inc.

28